# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ADAM ECHTINAW,                               )
                                             )
      Plaintiff,                             )
                                             )
v.                                           )     **CIVIL ACTION**
                                             )     **No: 08-3011-KHV**
HARLEY LAPPIN, et al.,                       )
                                             )
      Defendants.                            )
_____)

## MEMORANDUM AND ORDER

Adam Echtinaw, a prisoner in the United States Penitentiary in Leavenworth, Kansas ("USP Leavenworth"), brings suit *pro se* against Harley Lappin, Duke Terrell, Claude Chester, Michael K. Nalley, Michael D. Crowell, Jack Fox and Susan Barnett.  Plaintiff alleges that defendants, who are current or former employees of the federal prison system, infringed his freedom of religion in violation of the First Amendment and the Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb - 2000bb-4 ("RFRA"), and disregarded Bureau of Prison ("BOP") policies and procedures.  This matter is before the Court on the remaining portions of plaintiff's <u>Request For Preliminary Injunction</u> (Doc. #41) filed August 14, 2008; <u>Defendants' Motion To Dismiss Or, In The Alternative, Motion For Summary Judgment</u> (Doc. #39) filed July 18, 2008 and <u>Plaintiff's Response To The Defendant's [sic] Motion To Dismiss Or, In The Alternative, Motion For Summary Judgment</u> (Doc. #40) filed August 5, 2008.  Plaintiff opposes defendants' motion to dismiss and seeks class certification.[1]  <u>See</u> <u>id.</u> at 3.

---

[1]     At the time defendants filed their motion to dismiss and plaintiff filed his response, plaintiff's <u>Motion To Amend Complaint</u> (Doc. #33) was still pending. Defendants' motion to dismiss addressed plaintiff's proposed amendments, and plaintiff's response reiterated his pending request to add two defendants. On September 19, 2008, the Court overruled plaintiff's motion to amend, mooting the portions of the parties' motions which involve plaintiff's proposed amendments. <u>See</u> <u>Order</u> (Doc. #42).

## I.  PRELIMINARY INJUNCTION

On December 18, 2008 the Court entered an order (Doc. #46) which overruled as moot plaintiff's request for a $200 meal allowance and books and DVDs.  The Court also ordered plaintiff to show cause in writing by December 31, 2008 why his request that the Friday Jumu'ah prayer services be relatively undisturbed should not be overruled as moot, given defendants' assertions that Crowell (1) specifically does not schedule other services in the auditorium area (including the adjacent rooms) during the time when the Jumu'ah service is held, (2) has apprised another chaplain of the Muslim community's concerns about noise and (3) has instructed his staff to make efforts to diminish any noise going to the auditorium area and ensure that the doors remain closed.  Plaintiff did not respond to the Court's order.  Therefore the Court overrules as moot the remaining portion of plaintiff's Request For Preliminary Injunction (Doc. #41).

## II.  MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Defendants move to dismiss certain claims under Rule 12(b)(1), Fed. R. Civ. P.,  for lack of subject matter jurisdiction based on (1) failure to exhaust administrative remedies, (2) statute of limitations and (3) sovereign immunity.  Defendants seek to dismiss one defendant for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P.  Defendants also seek dismissal for failure to state a claim under Rule 12(b)(6) or summary judgment under Rule 56(c), Fed. R. Civ. P.  Specifically, defendants contend that (1) some claims must be dismissed because plaintiff did not exhaust administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a); (2) any claims concerning incidents which occurred before January 10, 2006 fall outside the two-year statute of limitations, K.S.A. § 60-513(a)(4); (3) any official capacity claims must be dismissed for lack of jurisdiction as a matter of sovereign immunity; (4) claims against Lappin should be dismissed for lack of *in personam* jurisdiction; (5) claims against Lappin, Nalley, Terrell, Chester and Fox should be dismissed under the theory of

*respondeat superior*; (6) plaintiff does not allege a violation of the First Amendment or RFRA; (7) any individual capacity claims should be dismissed because defendants are entitled to qualified immunity; (8) the PLRA prohibits plaintiff's claims because plaintiff has not made a prior showing of physical injury; and (9) plaintiff's request for injunctive relief is prohibited by 18 U.S.C. § 3626.

For the reasons stated below, defendants' motion is sustained.

**Facts**

The material facts, with disputes resolved in plaintiff's favor, are as follows.[2]

Plaintiff is a federal prisoner who practices the Muslim faith. Plaintiff has been incarcerated at USP-Leavenworth since January 27, 2006. During his incarceration, plaintiff has complained to prison officials, both personally and in writing, that his ability to practice the Muslim faith is impeded because of disruption to worship services, lack of access to religious materials and problems with religious celebrations. The BOP has a three-part administrative program which is designed to address inmate concerns regarding any aspect of confinement. The procedure is codified in 28 C.F.R. §§ 542.10 - 542.19.[3] Plaintiff followed the administrative remedy procedure

---

[2]    In responding to defendants' motion for summary judgment, plaintiff did not comply with D. Kan. Rule 56.1, the local rule which governs summary judgment. The rule requires a party opposing a motion for summary judgment to begin the opposition with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists, separately numbering by paragraph each fact in dispute, referring with particularity to the portions of the record upon which the opposing party relies, and (if applicable) stating the number of movant's fact that is disputed. D. Kan. Rule 56.1(b). All material facts set forth in the movant's statement shall be deemed admitted unless specifically controverted by the opposing party. D. Kan. Rule 56.1(a).

Plaintiff has not complied with this rule. Throughout his argument, he intersperses a few unsupported factual allegations and statements which purport to controvert defendants' factual allegations. For the most part, however, instead of controverting defendants' factual allegations or adding his own, plaintiff simply challenges defendants' arguments. Despite this, because plaintiff proceeds *pro se*, the Court has diligently searched plaintiff's brief and attachments to determine whether genuine issues of material fact preclude summary judgment. See Jackson v. Yellow Logistics, Inc., 24 F. Supp.2d 1206, 1209 (D. Kan. 1998).

[3]    That procedure provides in part as follows:

(a) Purpose. The purpose of the Administrative Remedy Program is to allow

(continued...)

with respect to all but two of the claims in his complaint: the Eid-ul-Adha ceremonial meal on December 19, 2007, and the Muslim community's inability to purchase books from a specific publisher.

Lappin is Director of the BOP and works in Washington, D.C.  Nalley is BOP Regional Director.  Terrell was Warden at USP-Leavenworth when some of the events in question occurred, but he did not have direct involvement with any issues raised in plaintiff's complaint.  Chester became Warden at USP-Leavenworth in September of 2007 and was not directly involved in the matters raised in plaintiff's complaint.  He did sign a regional administrative remedy response to plaintiff from the North Central Regional BOP.  Fox was Executive Assistant at USP-Leavenworth until August of 2006, when he became Associate Warden.  Fox was not directly involved with the Eid-ul-Adha celebration on December 31, 2006 or the inadvertent destruction of books in September of 2006, but he told Muslim inmates that the books would be replaced.  Fox did not supervise or oversee religious services or food services.  On occasion, inmates raised verbal concerns to Fox and Fox directed them to other staff at USP-Leavenworth.  Crowell is Supervisory Chaplain at USP-Leavenworth. Barnett was a Chaplain at USP-Leavenworth.

The religious services department at USP-Leavenworth manages religious diets, services, ceremonies and meetings at the prison.  For guidance in making decisions about prison religious activities, Crowell consults agency policy, religious experts from the local community and/or the BOP Central Office Religious Issues Committee.

_____

[3](...continued)
an inmate to seek formal review of an issue relating to any aspect of his/her own confinement.  An inmate may not submit a Request or Appeal on behalf of another inmate.

(b) Scope.  This Program applies to all inmates in institutions operated by the Bureau of Prisons . . . .

28 C.F.R. § 542.10.

BOP policy permits but does not require the religious services department to provide one ceremonial meal per year to each inmate religious group.  To maintain menu equity, BOP policy requires that all such meals be prepared from prison master menus.  BOP policy permits but does not require chaplains to acquire no more than $200 in traditional or ritual foods to supplement a ceremonial meal menu.  In the last six years, USP-Leavenworth has not provided supplemental ritual foods to any faith group because the Central Office strongly discourages the practice and the BOP has budgetary constraints.  Crowell does not purchase supplemental food for ceremonial meals, but he passes along inmate menu requests to the food services department.  Crowell advises inmates to work with the food services department on ceremonial meal menu requests, but the food services department makes the final decisions about ceremonial menus.

USP-Leavenworth allows each faith group one ceremonial meal each calendar year. Muslim inmates held their ceremonial meal for 2006 in January during the Eid-ul-Adha celebration.  Because Eid-ul-Adha is based on lunar cycles, it occurred twice in 2006:  once in January and once in December.  Having already held their 2006 ceremonial meal, the Muslim inmates asked Crowell to let them hold their 2007 ceremonial meal in December of 2006.  Crowell agreed.  The Muslim inmates asked Crowell for certain foods from the food services department menu for that ceremony. Crowell passed along some but not all of the requests to the food services department.

Crowell knows the general tenets of the Muslim faith, and he regularly consults the Central Office and a local Muslim Imam to obtain information about certain Muslim religious activities. In 2006, he followed this practice to determine when to schedule the Eid-ul-Adha celebration for December.  Crowell consulted materials provided by the Central Office, which indicated that the celebration should begin on December 31, 2006.  He also consulted the Imam about the timing of the celebration and scheduled it to begin on December 31, 2006.

Through the chapel library, inmates can review and check out books, periodicals, CDs,

video cassette tapes and DVDs.  Approximately four library shelves house Muslim faith-based literature, CDs and video cassette tapes.  In September of 2006, the Correctional Programs Division of the BOP Central Office issued a memorandum which, pending further review for discriminatory content or content that could radicalize inmates or incite them to violence, advised staff to discard certain materials and store or shelve materials published by certain entities.  At USP-Leavenworth, the task was assigned to Barnett, who misread the memorandum as directing that all books related to certain publishers to be discarded rather than stored.  She therefore destroyed the identified books.  After the error was discovered, she and Crowell notified Muslim inmates of the mistake and advised them that comparable new books would be purchased as soon as they were cleared for release onto the library shelves.  In December of 2006, the chaplain department purchased the Oxford Encyclopedia of the Modern Islamic World and the Oxford History of Islam and placed them in the chapel library.  In June of 2007, the department purchased several books for the Muslim community, including Riyadh Al Saliheen/Gardens of the Pious Arabic/English, Ibn Kathir Qur'an Translation English/Arabic (four volumes) and Life of Muhammad Translation of Ibn Ishaq Sirat.  In August of 2007, the chaplain department purchased additional publications for the Muslim population.  The chapel library review process has ceased.  Staff no longer set aside or distinguish materials from certain publishers, and the BOP does not ban materials from specific publishers or authors.

During his incarceration, plaintiff has complained that Islamic literature and pamphlets are not available in the prison chapel to the same degree as other religious literature.  Per prison policy, the Chaplain department does not purchase religious pamphlets but makes donated pamphlets available to inmates.  The Chaplain department does not seek donations from particular religious groups and has no control over who sends donations for prisoners.  Various religious organizations donate pamphlets or other religious materials to the prison.  The Chaplain department makes all

appropriate pamphlets and materials available to inmates.  To the extent the prison receives donations for Muslim inmates, they are made available in the same manner as donations for other religious groups.  If an inmate requests a copy of a pamphlet or mini-guide, the chaplain department will make and distribute copies if it can do so without infringing a copyright.  For example, Crowell made approximately 40 copies of a mini-guide which he obtained from inmates regarding Rhamadan and the Qur'an, and the Chaplain department distributed them during a Jumu'ah prayer service.

If an inmate wishes to own a personal religious item such as prayer oil, BOP policy requires the inmate to purchase the item from commissary stock or through an approved catalog utilizing the Special Purchase Order Process.  Crowell serves as an intermediary between the inmates and the commissary department so that the commissary can attempt to stock items which are acceptable to and preferred by specific faith groups.  He tries to ensure that the religious items which the inmates request meet security requirements.  Crowell does not control the commissary department and does not have the power to decide pricing or inventory, or when to change or purchase new products.

Since 2004, Crowell has worked with Muslim inmates to resolve their dissatisfaction with prayer oils sold at the prison commissary.  Specifically, Crowell has met with various inmates of the Muslim faith, consulted approved vendor lists and worked with the inmate population to identify a vendor which can supply an acceptable type of prayer oil.  In July of 2004 and February of 2005, Crowell gave the commissary names of prayer oil fragrances which Muslim inmates had requested.  In February of 2007, the prayer oil was removed from the commissary because it was flammable.[4]  Crowell explored whether a non-flammable version of the same oil was available, and

_____

[4]       Plaintiff's complaint makes no direct allegations against Terrell. In response to defendants' motion, however, plaintiff conclusorily alleges that Fox and Terrell directed Crowell

(continued...)

the commissary began stocking oil that cost $4.90 for a fourth of an ounce.  In April of 2008,  after receiving complaints about the cost and fragrance of the oil, Crowell again communicated with the commissary department about purchasing other oils.  In July of 2008, the Muslim inmates agreed to buy some of the lower-quality, higher-priced oil.  In exchange, the commissary agreed to order a better fragrance for a better price.

BOP policy requires that weekly congregate religious services be available for all inmates except those detained in the special housing unit.  At USP-Leavenworth the Muslim community celebrates Jumu'ah prayer every Friday afternoon in the prison auditorium, which is large enough to accommodate the number of participants and does not have any religious items on the wall which need to be covered during the services.  The religious services department does not schedule other activities in the auditorium during this time and it closes the doors to avoid interruption from areas outside the auditorium and offices behind the auditorium.  Nonetheless, Crowell has received complaints about loud activities during Jumu'ah prayer services.  He believed that the noise came from the Life Connections program, another faith-based program at USP-Leavenworth which has nearby rooms behind two closed doors and a hallway.  Crowell therefore advised the Life Connections chaplain about the Muslim community concerns.  Crowell heard no further complaints until August of 2008, when he again instructed staff to make efforts to prevent noise from disturbing activities in the auditorium area.

### Plaintiff's Claims

Plaintiff alleges that defendants violated his free exercise rights in violation of the First Amendment and RFRA.  Plaintiff brings nine claims in seven counts alleging First Amendment and

---

[4](...continued)
to ban the prayer oil.  See Plaintiff's Response To The Defendant's [sic] Motion To Dismiss Or, In The Alternative, Motion For Summary Judgment ("Response") (Doc. # 40) at 12.  Plaintiff does not provide affidavits or other record evidence to support this assertion and the Court disregards it.

RFRA violations against all defendants:[5] (1) the Chaplain department at USP-Leavenworth refuses to make Islamic literature or pamphlets available in the chapel to the same degree as Christian and Catholic pamphlets; (2) the Chaplain department denies the Muslim community the opportunity to purchase "good smelling" prayer oils through the Special Purchase Order Process; (3) Crowell denied the Muslim inmates an adequate ceremonial meal for the Eid-ul-Adha celebration on December 31, 2006; (4) Crowell forced the Muslim community to celebrate Eid-ul-Adha on December 31 rather than December 30, 2006, and the service was held at 11:00 a.m. rather than between 8:00 a.m. and 10:00 a.m. and Crowell did not provide a ceremonial meal for the Eid-ul-Adha celebration on December 19, 2007; (5) the Jumu'ah services on Fridays in the auditorium, usually from 1:00 p.m. to 2:00 p.m., are often disturbed by piano playing and other outside noises; (6) Barnett discarded a ten-volume set of the Holy Qur'an and Commentary by Ibn Kathir and an eight-volume set of Fatawa Islamiyya which have not been replaced, despite assurances by Fox and Crowell that they would be; and (7) Crowell has not purchased new books, CDs or DVDs for the Muslim community in two years and the Muslim community is prevented from purchasing books published by Dar-us-Salaam [sic] publications. Plaintiff seeks permanent injunctive relief requiring that (1) the Muslim community be provided a place to worship which is undisturbed by piano playing and volunteer programs; (2) the Muslim Eid-ul-Adha celebration be held according to the new moon sighting by Muslims at a local Islamic Center no later than 10:00 a.m.; (3) Muslims be

_____

[5]     In Counts 3, 4 and 6 plaintiff identifies individual defendants who allegedly committed the acts about which he complains (Crowell is named in Counts 3, 4 and 6; Barnett and Fox are also named in Count 6).  In Counts 1, 2 and 7, plaintiff complains that the "Chapel department" or "Chaplain department" committed the acts about which he complains. Because the Chaplain department is not a named defendant, the Court construes the complaint to bring Counts 1, 2 and 7 against Crowell, the Supervisory Chaplain. Plaintiff also alleges generally that all defendants "were aware" that his First Amendment rights were being violated and failed to correct these violations, and that they violated RFRA by disregarding BOP policies and procedures.  See Complaint (Doc. #1) at 5.  The Court therefore construes plaintiff's complaint to bring individual capacity claims against Crowell (Counts 1-4, 6 and 7), Barnett (Count 6) and Fox (Count 6), and official-capacity claims against all defendants on all counts.

provided a ceremonial meal with traditional meats such as lamb and goat; (4) the Muslim library

be open to check out books, and (5) the Chapel purchase new books, CDs and DVDs.  Plaintiff

seeks $10,000 in compensatory damages and $10,000 in punitive damages from each defendant.

See Civil Rights Complaint (Doc. # 1) filed January 10, 2008.

### Analysis

As noted, defendants seek to dismiss certain claims under Rule 12(b)(1),  Fed. R. Civ. P.,

for lack of subject matter jurisdiction based on failure to exhaust administrative remedies, the

statute of limitations and sovereign immunity, and to dismiss one defendant under Rule 12(b)(2),

Fed. R. Civ. P., for lack of personal jurisdiction.  Defendants also seek dismissal for failure to state

a claim under Rule 12(b)(6) or summary judgment under Rule 56(c), Fed. R. Civ. P.   While

defendants and plaintiff have submitted information outside the pleadings, motions filed under

Rules 12(b)(1) and 12(b)(2) are not converted to motions for summary judgment when matters

outside the pleadings are considered by the court.  SK Fin. SA v. La Plata County, Bd. of County

Comm'rs, 126 F.3d 1272, 1275 (10th Cir. 1997) (when party attacks factual basis for subject matter

jurisdiction, court may consider evidence outside pleadings without converting motion under

12(b)(1) to motion for summary judgment); Topliff v. Atlas Air, Inc., 60 F. Supp.2d 1175, 1176-77

(D. Kan. 1999) (motion to dismiss for lack of personal jurisdiction not converted to summary

judgment motion when matters outside pleadings considered).

   **A.**     **Motion to Dismiss for Lack of Subject Matter Jurisdiction under Rule 12(b)(1)**

   **1.**     **Exhaustion of Administrative Remedies**

Plaintiff concedes that he has not exhausted administrative remedies under the

PLRA for two claims: those regarding the Eid-ul-Adha ceremonial meal on December 19, 2007 and

the Muslim community's inability to purchase books from a specific publisher.  Defendants argue

that this failure deprives the Court of subject matter jurisdiction over the claims under Rule 12(b)(1), Fed. R. Civ. P.  In the Tenth Circuit, however, plaintiff's failure to exhaust is not jurisdictional and a motion based upon failure to exhaust is properly brought under Rule 12(b)(6) for failure to state a claim –  not under 12(b)(1) for lack of subject matter jurisdiction.  Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1208 (10th Cir. 2003) (abrogated on other grounds by Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910 (2007)); see also Canady v. Werholtz, No. 04-2083-GTV, 2004 WL 1212050, *2 (D. Kan. June 1, 2004). Accordingly, while the Court finds that plaintiff has not exhausted his administrative remedies with respect to two claims, those claims should be dismissed under Rule 12(b)(6) rather than Rule 12(b)(1).

## 2.  Statute of Limitations

Defendants argue that plaintiff's complaint does not allege a time frame, so the Court should dismiss any claims that conceivably fall outside the limitations period.  Although this action arises under RFRA and Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), defendants raise the limitations period only in defense of plaintiff's Bivens claims, not plaintiff's RFRA claims.  Bivens claims are subject to the personal injury statute of limitations in the state where the action arose.  Indust. Constr. Corp. v. U.S. Bureau of Reclamation, 15 F.3d 963, 968 (10th Cir. 1994).  Accordingly, plaintiff's Bivens claims are subject to the two-year statute of limitations contained in K.S.A. § 60-513(a)(4).[6]  Hawks v. Rardin, 731 F. Supp. 1026, 1027 (D. Kan. 1990).  Plaintiff filed his Complaint on January 10, 2008 and alleged constitutional violations which stemmed from from his incarceration at USP-Leavenworth. Plaintiff was incarcerated at USP-Leavenworth on January 26, 2006, less than two years before he filed his complaint.  Accordingly, none of plaintiff's allegations fall outside the two-year limitations period

---

[6]      K. S. A. § 60-513(a)(4) requires "[a]n action for injury to the rights of another, not arising on contract, and not herein enumerated" to be brought within two years.

and defendants' motion to dismiss based on statute of limitations grounds is overruled.

### 3. Sovereign Immunity

Plaintiff alleges that defendants infringed his First Amendment and RFRA right to freely practice his religion.  Defendants argue that they are entitled to sovereign immunity on any official capacity claims against them.  Plaintiff's complaint is silent as to whether he sues defendants in their individual and/or official capacities, but in response to defendants' motion plaintiff affirms that he brings both individual capacity and official capacity claims.

As to <u>Bivens</u>, plaintiff must proceed against federal officials in their individual capacities because federal employees acting in their official capacities are immune from <u>Bivens</u> liability. <u>Simmat v. U.S. Bureau of Prisons</u>, 413 F.3d 1225, 1231 (10th Cir. 2005);  <u>Hatten v. White</u>, 275 F.3d 1208, 1210 (10th Cir. 2002) (citing <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 483-86 (1994)).  Therefore the Court sustains defendants' motion to dismiss plaintiff's First Amendment official capacity <u>Bivens</u> claims based on sovereign immunity.

As to RFRA, Congress has unequivocally waived sovereign immunity, though the waiver applies only to RFRA claims seeking injunctive relief.   <u>Crocker v. Durkin</u>, 159 F. Supp.2d. 1258, 1269 (D. Kan. 2001);  <u>Webman v. Fed. Bureau of Prisons</u>, 441 F.3d 1022, 1026 (D.C. Cir. 2006) (RFRA waiver does not include claims for money damages).  Accordingly, plaintiff's official capacity claims are permissible under RFRA (though not under <u>Bivens</u>).  Further, because plaintiff seeks only injunctive relief to remedy his RFRA claims, sovereign immunity does not apply.  <u>See</u> <u>Response</u> (Doc. #40) at 9.  Accordingly, the Court overrules defendants' motion to dismiss plaintiff's RFRA claims based on sovereign immunity.

### B.        Motion to Dismiss for Lack of Personal Jurisdiction under Rule 12(b)(2)

Lappin argues that because his principal place of business is and has been the BOP

Central Office in Washington, D.C., plaintiff does not allege sufficient grounds for personal jurisdiction.  The complaint alleges that Lappin works for the BOP in Washington D.C., and makes no other specific allegations about Lappin.  See Complaint (Doc. #1) filed January 10, 2008.  In response to Lappin's jurisdictional challenge, plaintiff states only that Lappin was "directly involved in destroying very important Islamic books" and cites Exhibit E, which appears to be an unverified one-page excerpt of a declaration in which Barnett describes a memorandum from BOP central office, detailing procedures for discarding or shelving certain books.[7]  Lappin did not issue the memorandum, however, and his name does not appear on it.

To avoid dismissal under Rule 12(b)(2), plaintiff has a "light" burden to make  a prima facie showing of personal jurisdiction.  Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995). The allegations in the complaint must be taken as true to the extent they are uncontroverted by defendant's affidavits, but only the well pled facts of plaintiff's complaint – as distinguished from conclusory allegations – must be accepted as true.  Id.  Here, Lappin does not controvert any facts in plaintiff's complaint, but rather asserts that plaintiff has not met his initial prima facie burden to show personal jurisdiction.

Determining whether a federal court has personal jurisdiction over a nonresident defendant in a federal question case requires two steps.  First, the court examines whether the applicable statute potentially confers jurisdiction by authorizing service of process on defendant.  Peay v. BellSouth Med. Ass't Plan, 205 F.3d 1206, 1209 (10th Cir. 2000).  The court then determines whether the exercise of jurisdiction comports with due process.  Id.

Neither 28 U.S.C. § 1331 or RFRA authorizes nationwide service of process.  The Court therefore turns to Rule 4, Fed. R. Civ. P., which governs service of process in federal cases.  See id. at 1210.  Under Rule 4(k)(1)(A), service of summons establishes personal jurisdiction over a

---

[7]         See Response (Doc. #40) at 7.

defendant who is subject to jurisdiction in the state court where the district court is located – here,

Kansas.  See Packerware Corp. v. B & R Plastics, Inc., 15 F. Supp.2d 1074, 1076 (D. Kan. 1998).

The Kansas long-arm statute, K.S.A. § 60-308(b), determines whether defendant is subject to

jurisdiction in Kansas state court. Id.   Section 60-308(b)(1) sets out various acts which confer

specific jurisdiction over nonresident defendants.  Specifically, it provides in relevant part that any

person who in person or through an agent does any of the enumerated acts submits to personal

jurisdiction with regard to any cause of action arising from the doing of any of the acts:

> (A) transaction of any business within this state;
> (B) commission of a tortious act within this state;
> (C) ownership, use or possession of any real estate situated in this state; . . .
> (E) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state;
> (F) acting within this state as director, manager, trustee or other officer of any corporation organized under the laws of or having a place of business within this state or acting as executor or administrator of any estate within this state;
> (G) causing to persons or property within this state any injury arising out of an act or omission outside of this state by the defendant if, at the time of the injury either (i) the defendant was engaged in solicitation or service activities within this state; or (ii) products, materials or things processed, serviced or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of trade or use; . . .

K.S.A. § 60-308(b)(1).  It also contains confers general jurisdiction over nonresidents whose contacts

with Kansas are "substantial, continuous and systematic." K.S.A. § 60-308(b)(2)[8]; OMI Holdings,

Inc.  v. Royal Ins. Co. Of Can., 149 F.3d 1086,  1090 (10th Cir. 1998).

---

[8]     K.S.A. § 60-308(b)(2) provides as follows:

> A person may be considered to have submitted to the jurisdiction of the courts of this state for a cause of action which did not arise in this state if substantial, continuous and systematic contact with this state is established that would support jurisdiction consistent with the constitutions of the United States and of this state.

Section 60-308(b) is liberally construed to allow personal jurisdiction over nonresident defendants to the fullest extent permitted by the Due Process Clause.[9] Equifax Servs., Inc. v. Hitz, 905 F.2d 1355, 1357 (10th Cir. 1990) (quoting Volt Delta Res., Inc. v. Devine, 241 Kan. 775, 740 P.2d 1089, 1092 (1987)).   Thus, for all practical purposes the inquiries are duplicative.  Thermal Components Co. v. Griffith, 98 F. Supp.2d 1224, 1227 (D. Kan. 2000).[10]  Therefore, for the Court to exercise personal jurisdiction over Lappin under K.S.A. § 60-308(b) and the Due Process Clause, plaintiff must allege either that (1) Lappin purposely directed his actions to Kansas and those activities caused the injuries which give rise to this litigation, or (2) Lappin has continuous and systematic contacts with Kansas.

Lappin asserts that plaintiff has not met his initial prima facie burden to show personal jurisdiction because plaintiff does not allege either that he committed one of the enumerated acts found in section 60-308(b)(1) or that he had continuous or systematic contacts with Kansas as required by section 60-308(b)(2).  The Court agrees.  In his complaint, plaintiff alleges only that Lappin was BOP director while plaintiff was incarcerated at USP-Leavenworth.  Exhibit E does not allege or raise a genuine issue of material fact whethert Lappin had "direct involvement" in the book destruction.  The complaint contains no allegations that Lappin committed any act enumerated in

---

[9]     The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant so long as defendant has minimum contacts with the forum state.  Id. (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 100 S. Ct. 559 (1980)).  The minimum contacts may be established in two ways: by asserting specific jurisdiction over a nonresident defendant who has purposefully directed his activities at forum residents and caused injuries which resulted in litigation, or by asserting general jurisdiction based on defendant's continuous and systematic contacts with the forum state when the alleged injuries are not connected to defendant's forum-related activities.  Id.; see also Packerware, 15 F. Supp.2d at 1077.

[10]     The Tenth Circuit recognizes that the Kansas long-arm statute is construed liberally to allow jurisdiction to the full extent permitted by due process and as such, authorizes the Court to proceed directly to the constitutional issue.  Id.; see also OMI Holdings, Inc., 149 F.3d at 1090. Rather than skip the long-arm analysis, however, the Court analyzes the long-arm and due process issues in tandem.

section 60-308(b)(1).  Further, plaintiff's complaint and supporting documents make no allegation that Lappin had any contact whatsoever with Kansas, much less contact which was sufficiently continuous and systematic to confer general jurisdiction consistent with section 60-308(b)(2). Therefore, plaintiff has not met his burden to show prima facie personal jurisdiction over Lappin. See, e.g. Banks v. Partyka, No. CIV-07-0331-F, 2007 WL 2693180, *3-4 (W.D. Okla. Sept. 11, 2007) (recommending dismissal sua sponte where pro se plaintiff alleged no facts to support personal jurisdiction over nonresident defendant consistent with long-arm statute or due process); see also Mansoori v. Lappin, No. 04-3241-JAR, 2005 WL 2387599, *5 (D. Kan. Sept. 21, 2005) (allegations that out-of-state BOP employees received prisoner's letters, reviewed his complaints, signed his appeals and visited USP-Leavenworth insufficient to confer personal jurisdiction).  The Court therefore sustains the motion to dismiss Lappin for lack of personal jurisdiction.

### C.       Motion for Summary Judgment under Fed. R. Civ. P. 56

Both parties provide evidence outside the pleadings and the Court therefore construes defendants' motion to dismiss under Rule 12(b)(6) as one for summary judgment under Rule 56.  See Fed. R. Civ. P. 12(b); Johnson v. Bureau of Prisons, No. 99-3239-KHV, 2000 WL 574881, *2 (D. Kan. Apr. 4, 2000).

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248.  The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.  Id. at 251-52.

A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252. The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, Okla., 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). And, while the Court views the record in a light most favorable to the party opposing summary judgment, the nonmoving party may not rest on its pleadings but must set forth specific facts. Id. The nonmoving party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). If the nonmoving party's evidence is merely colorable or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 250-251.

### 1. **Bivens** Claim and Respondeat Superior

Plaintiff's complaint alleges that Crowell (Counts 3, 4, and 6), Barnett (Count 6) and Fox (Count 6) and the "Chapel department" or "Chaplain department" (Counts 1, 2, 4 and 7) violated his First Amendment and RFRA rights by interfering with his right to freely exercise his religion. Plaintiff further alleges that all defendants knew that his First Amendment rights were being violated, failed to correct the violations, and violated RFRA by disregarding BOP policies and procedures. Nalley, Terrell, Chester and Fox argue that the claims against them should be dismissed because plaintiff has not alleged their personal involvement in the conduct giving rise to this action. Plaintiff's complaint makes no direct allegations against Nalley, Terrell or Chester. It only alleges that Fox told Muslim inmates that the destroyed books would be replaced. In response to defendants' motion for summary judgment, plaintiff asserts that (1) "[t]he Supervisors learned of the violations

of plaintiff's rights and failed to do anything to fix the situation;" (2) Nally, as the Regional Director of the midwestern region, was "made aware" of plaintiff's allegations through the administrative remedy process and "failed to correct the situation;" (3) Terrell was "made aware" of plaintiff's complaints "verbally on mainline by several muslim inmates" and "was handed" an inmate-to-staff request about the destroyed books; (4) Fox was "made aware" of the destroyed books, the Eid-ul-Adha celebration on the incorrect day, and the lack of ceremonial food and "attempted to correct the situation;" (5) Chester was "made aware" that the December, 2007 Eid-ul-Adha meal was not paid for and that the books had been destroyed;[11] and (6) Terrell and Fox directed Crowell to ban prayer oil in February of 2007.  See Response (Doc. #40) at 8, 12.  Plaintiff provides no affidavits or other evidence to support these allegations.

To state a Bivens claim, plaintiff must allege direct personal participation by each individual defendant.  Steele, 355 F.3d at 1214.  The doctrine of *respondeat superior* does not apply unless plaintiff can allege an "affirmative link" between the constitutional deprivation and the supervisor's personal participation, exercise of control or direction or failure to supervise.  Meade v. Grubbs, 841 F.2d 1512, 1527-28 (10th Cir. 1988); see also Martinez v. Lappin, No. 04-3023-KHV, 2004 WL 2457800, *2 (D. Kan. Nov. 1, 2004).  The complaint contains no allegation that Nalley, Terrell or Chester personally participated in any action about which plaintiff complains, and the record contains no evidence that they did so.  Further, while plaintiff specifically names Fox in one cause of action, plaintiff alleges only that he told Muslim inmates that destroyed books would be replaced.  Neither plaintiff's complaint (which contains specific allegations against only three of seven named defendants) nor plaintiff's reply (which only makes unsupported and conclusory allegations that defendants were "made aware" of his complaints) demonstrates that Nalley, Terrell, Chester or Fox

---

[11]     Plaintiff's claim about the December, 2007 Eid-ul-Adha meal has been dismissed for failing to exhaust administrative remedies.  See § II.A.1, *supra*.

personally participated or acquiesced in constitutional deprivations. See, e.g. Duarte v. U.S. Bureau of Prisons, No. 93-3369-GTV, 1995 WL 708427, *4 (D. Kan. Nov. 3, 1995) (conclusory allegations that supervisory defendants knew about unconstitutional investigation and might have been part of conspiracy insufficient to defeat summary judgment).  The Court therefore sustains defendants' motion and dismisses plaintiff's Bivens claims against Nalley, Terrell, Chester and Fox.  Defendants do not address the sufficiency of plaintiff's claims under RFRA and the Court does not address that question.

### 2.  Plaintiff's Free Exercise Claims

Plaintiff claims that defendants violated his First Amendment and RFRA rights to freely exercise his religion.  The Court has previously dismissed portions of Counts 4 and 7 for failing to exhaust administrative remedies; plaintiff's First Amendment official capacity claims against all defendants; all claims against Lappin; and plaintiff's individual capacity First Amendment claims against Nalley, Terrell, Chester and Fox.  Therefore the following claims remain in the case:[12] (1) First Amendment  individual capacity claims against Crowell (Counts 1-4, 6 and 7) and Barnett (Count 6); and (2) RFRA official capacity claims against all defendants on all counts.  In these counts, plaintiff complains that the Chaplain department at USP-Leavenworth refused to make Islamic literature and pamphlets available in the Chapel to the same degree as Christian and Catholic literature (Count 1); the Chaplain department denies the Muslim community the opportunity to purchase "good smelling" prayer oils through the Special Purchase Order Process (Count 2); Crowell

---

[12]      Plaintiff names Crowell (Counts 3, 4 and 6), Barnett (Count 6), Fox (Count 6) and the "Chapel department" or "Chaplain department" (Counts 1, 2, 4 and 7) in specific theories of recovery.  He also alleges generally that all defendants "were aware" that his First Amendment rights were being violated and failed to correct these violations, and that they violated RFRA by disregarding BOP policies and procedures.  See Complaint (Doc. #1) at 5.  The Court therefore construes plaintiff's complaint to bring individual capacity claims against Crowell (Counts 1-4, 6 and 7), Barnett (Count 6) and Fox (Count 6), and official-capacity claims against all defendants on all counts.

denied Muslim inmates an adequate ceremonial meal for the Eid-ul-Adha celebration on December 31, 2006 (Count 3); (4) Crowell forced the Muslim community to celebrate Eid-ul-Adha on December 31 rather than December 30, 2006, and the service was held at 11:00 a.m. rather than between 8:00 a.m. and 10:00 a.m. (Count 4); (5) Jumu'ah services on Fridays in the auditorium, usually from 1:00 p.m. to 2:00 p.m., are often disturbed by piano playing and other outside noises (Count 5); (6) Barnett discarded a ten-volume set of the Holy Qur'an and commentary by Ibn Kathir and an eight-volume set of Fatawa Islamiyya which have not been replaced despite assurances by Fox and Crowell (Count 6); and (7) Crowell has not purchased new books, CDs or DVDs for the Muslim community in two years (Count 7).

The First Amendment mandates that prisoners be afforded reasonable opportunities to exercise sincerely held religious beliefs. <u>Hammons v. Saffle</u>, 348 F.3d 1250, 1254 (10th Cir. 2003). Free exercise rights are not absolute, however, and may be restricted by prison regulations that are reasonably related to legitimate penological interests.[13] <u>Beerheide v. Suthers</u>, 286 F.3d 1179, 1184 (10th Cir. 2002) (citing <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987)). For a prisoner to prove a constitutional violation based on free exercise of religion, he must show that a prison regulation substantially burdened his sincerely held religious beliefs. <u>Wares v. Simmons</u>, 524 F. Supp.2d 1313, 1319 (D. Kan. 2007); <u>Kay v. Bemis</u>, 500 F.3d 1214, 1218 (10th Cir. 2007). If plaintiff makes that showing, defendant may identify legitimate penological interests which justify the impinging conduct. <u>Id.</u> The burden then shifts back to plaintiff to show that the articulated concerns were irrational. <u>Id.</u> This analysis enables the court to determine whether the prison regulation – in its general application – is reasonably related to legitimate penological interests. <u>Kikumura v. Hurley,</u>

---

[13]     Plaintiff does not challenge written prison policies or regulations, per se. Rather, he argues that prison officials are not complying with his interpretation of those policies and are therefore violating his rights. Whether plaintiff challenges an official policy or a prison official's individualized act, however, the analysis is the same. <u>Boles v. Neet</u>, 486 F.3d 1177, n. 4 (10th Cir. 2007).

242 F.3d 950, 960 (10th Cir. 2001).  To evaluate reasonableness, the Court examines (1) whether the prison policy is rationally connected to a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives would accommodate the prisoner's rights.  Boles, 486 F.3d at 1181.

RFRA supplements and expands First Amendment free exercise protection.  See id.; see also Wares, 524 F. Supp.2d at 1320, n. 8.  To establish a prima facie RFRA claim, a prisoner must show that the federal government substantially burdened the prisoner's sincere exercise of religion.  Kikumura, 242 F.3d at 960.  The burden then shifts to defendants to show that application of the regulation (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that interest.  Id. at 961-62.  The RFRA analysis substantively differs from the First Amendment free exercise analysis in that once the prisoner makes a prima facie RFRA case, defendants must show that they have a compelling reason to apply the challenged regulation which is the least restrictive to plaintiff.  In contrast, under the First Amendment, defendants must only demonstrate that the regulation is reasonably related to legitimate penological interests.  Id.

Defendants argue that plaintiff does not state viable claims because he has not shown that the challenged conduct substantially burdened his religious beliefs.[14]  The Tenth Circuit uses the same "substantial burden" test to evaluate RFRA and First Amendment free exercise prisoner claims.  Wares, 524 F. Supp.2d at 1320, n. 9.  A "substantial burden" is one that (1) significantly inhibits or constrains plaintiff's religious conduct or expression, (2) meaningfully curtails plaintiff's ability to express adherence to his faith or (3) denies plaintiff reasonable opportunity to engage in fundamental

---

[14]     Defendants do not question whether plaintiff's beliefs are sincerely held nor dispute the religious nature of his beliefs.

religious activities.  Id. at 1320.  If plaintiff fails the "substantial burden" test, the inquiry ends.  As explained in more detail below, plaintiff has not demonstrated that the acts about which he complains substantially burdened his sincerely held religious belief.  This failure is fatal to his RFRA and First Amendment claims.  Therefore the Court sustains defendants' motion for summary judgment and dismisses plaintiff's remaining claims.[15]

### a.  Islamic Literature and Pamphlets (Count 1)

Plaintiff has complained that Islamic literature and pamphlets are not available in the prison chapel to the same degree as other religious literature.  Per prison policy, the Chaplain department does not purchase religious pamphlets or seek donations of pamphlets from particular groups and it has no control over who sends donations for prisoners.  It only makes donated pamphlets available to inmates.  Various religious organizations donate pamphlets or other religious materials and that the Chaplain department makes  available to inmates all appropriate pamphlets and materials.  To the extent the prison receives donations for Muslim inmates, they are made available in the same manner as donations for other religious groups.  If an inmate requests a copy of a pamphlet or mini-guide, the Chaplain department will make and distribute copies if it can do so without copyright infringement.  Crowell made approximately 40 copies of a mini-guide which he

---

[15]    Defendants also assert a qualified immunity defense, argue that the PLRA prohibits plaintiff's claims because he has not made a prior showing of physical injury, and contend that 18 U.S.C. § 3626 prohibits plaintiff's request for injunctive relief.  Because plaintiff has not stated a constitutional violation, the Court does not reach these issues.

For a case to be certified as a class action, the party seeking certification must comply with the requirements set out in Rule 23(a), Fed. R. Civ. P., and D. Kan. Rule 23.1.  Plaintiff has the burden to present an evidentiary basis to show that the action is maintainable as a class action under Rule 23.  Kelly v. Market USA, No. 01-4169-SAC, 2002 WL 1334830, *2 (D. Kan. May 14, 2002).  Plaintiff has not done so.  Plaintiff's response to defendants' motion includes two sentences asking that the action be maintained as a class, but plaintiff has made no effort to comply with Rules 23 or 23.1.  Specifically, plaintiff has not attempted to demonstrate the four requirements (numerosity, commonality, typicality and fair and adequate representation) of Rule 23, nor has he complied with the pleading requirements of D. Kan. Rule 23.1.  Plaintiff's request for class certification is therefore overruled.

obtained from inmates regarding Rhamadan and the Qur'an, and the Chaplain department distributed them during a Jumu'ah prayer service. Plaintiff has not suggested how the alleged lack of pamphlets constitutes a substantial burden on his ability to practice his religion.[16]

Further, it is undisputed that approximately four library shelves house Muslim faith-based literature, CDs and video cassette tapes. Plaintiff has not rebutted these facts or suggested how the volume of religious literature substantially burdens his ability to practice his religion.

### b. Prayer Oils (Count 2)

Plaintiff complains that before July 28, 2008 the commissary prayer oils were expensive and of poor quality. Defendants have presented evidence that they do not control the oil which is stocked in the commissary and that they have worked with Muslim inmates over the past few years to resolve their concerns about prayer oil fragrance, quality and cost. Plaintiff has not rebutted these material facts. Defendants further contend that prayer oil was removed from the commissary for a period in 2007 because it was flammable. Plaintiff does not argue that defendants denied him access to prayer oil, only that he did not like the fragrance, quality or cost of the oil to which he had access. Plaintiff has not demonstrated how lack of access to "adequate" prayer oil substantially burdened his ability to practice his faith. Furthermore, it is unlikely that plaintiff could do so because policies which restrict prayer oil ownership and possession are generally permissible under the First Amendment. Hammons, 348 F.3d at 1255 (in-cell ban on prayer oils permissible under First Amendment even when prisoner complains religious experience "significantly lessened"); Crocker, 159 F. Supp.2d at 1275 (D. Kan. 2001) (prison's rejection of package

---

[16]    In response to defendants' motion to dismiss, plaintiff alleged that Crowell has "let the Muslim community know . . . that he will not ask for donations for Muslim literature, because he don't [sic] know whose [sic] a terrorist [sic] or not." See Response (Doc. #40) at 11. Plaintiff does not support this claim with affidavits or other evidence. Also, affidavits that other inmates have had problems obtaining the Qur'an does not demonstrate that plaintiff's free exercise rights have been substantially burdened.

containing prayer oil did not violate First Amendment when prayer oil available from other sources such as commissary).

### c. Interruption of Jumua'h Service (Count 3)

Plaintiff complains that the Jumu'ah prayer services on Fridays are often disturbed by noise from activities in areas adjacent to the auditorium where services are held. Defendants have presented evidence that they have made efforts to block sound from other sources by keeping doors closed, that they do not schedule other activities in nearby areas during the Jumu'ah service and that they have notified other prison religious groups about the Muslim community complaints.

While plaintiff has not rebutted these material facts, he contends that despite these efforts, noise occasionally interrupts the service, which is supposed to be conducted in a quiet environment. Plaintiff presents no evidence or authority, however, to support his contention that infrequent noise from other prison areas during the Jumu'ah prayer service constitutes a substantial burden on his religious beliefs.  Furthermore, the Court has previously granted summary judgment in favor of defendants who physically stopped Jumu'ah services to confiscate fezzes and remove inmates who were suspects in a potential work stoppage.  Crocker, 159 F. Supp.2d at 1274-75.  In Crocker, the interruptions occurred nine months apart, and though plaintiffs argued that none of the Jumu'ah participants were involved in the work stoppage, they presented no evidence that the interruptions lasted longer than necessary or that they were not allowed to continue the service after the interruptions.  Because plaintiffs presented no evidence that the interruptions were unwarranted or pretextual, the Court found as a matter of law that they did not constitute a First Amendment violation.  Id.  Though plaintiff alleges more frequent interruptions than occurred in Crocker, plaintiff does not show that the infrequent noise substantially burdens his free exercise.  Plaintiff has not demonstrated a genuine issue of material fact on this issue and the Court therefore concludes that

defendants are entitled to summary judgment on Count 3.

### d.  Eid-ul-Adha Ceremony in December of 2006 (Counts 4 & 5)

Plaintiff contends that the prison held the Eid-ul-Adha ceremony for December of 2006 on the wrong day at the wrong time and that prison policy mandates a $200 celebratory meal each year for each religious group.  Defendants have presented evidence that they correctly scheduled the ceremony after consulting the BOP Central Office and a local Imam, and that while BOP policy technically permits the $200 allowance, USP-Leavenworth has not provided it to any religious group for at least six years.  Plaintiff has not rebutted these material facts, and has presented no evidence to demonstrate how the ceremony schedule or lack of a $200 meal allowance substantially interfered with his ability to freely exercise his religion.  See Crocker at 1277-78 (plaintiff who did not demonstrate bean pies essential to ceremonial meal did not demonstrate constitutional deprivation).  Defendants are therefore entitled to summary judgment on this issue.

### e.  Books, CDs and DVDs (Counts 6 & 7)

With respect to books, plaintiff's chief complaint is that Barnett misread a memorandum and inadvertently destroyed Islamic books in the Chapel library.  In December of 2006, the Chaplain department purchased the Oxford Encyclopedia of the Modern Islamic World and the Oxford History of Islam for the chapel library.  In June of 2007, the department purchased several books for the Muslim faith-base, including Ridyadh Al Saliheen/Gardens of the Pious Arabic/English, Ibn Kathir Qur'an Translation English/Arabic (four volumes) and Life of Muhammad Translation of Ibn Ishaq Sirat.  In August of 2007, the Chaplain department purchased additional publications for the Muslim population.  The chapel library review process has ceased, and staff no longer sets aside or distinguishes materials from certain publishers.  Plaintiff does not controvert these facts, and has not demonstrated a genuine issue of material fact whether the inadvertent destruction of books that did not belong to him constituted a substantial burden on his

ability to practice his religion.  The same is true with respect to religious books which defendants did not purchase.  Therefore defendants are entitled to summary judgment on Counts 6 and 7.

### C.      Summary

As discussed above, with respect to Defendants' Motion to Dismiss or, In the Alternative, Motion for Summary Judgment (Doc. #39) filed August 14, 2009, the Court dismisses (1) portions of Counts 4 and 7 for failure to exhaust administrative remedies; (2) plaintiff's First Amendment official capacity claims against all defendants, on grounds of sovereign immunity; and (3) all claims against Lappin for lack of personal jurisdiction.  The Court grants summary judgment in favor of defendants on all remaining claims: (1) plaintiff's individual capacity First Amendment claims against Nalley, Terrell, Chester and Fox under the theory of *respondeat superior*, and (2) plaintiff's First Amendment  individual capacity claims against Crowell (Counts 1-4, 6 and 7) and Barnett (Count 6); and (3) plaintiff's  RFRA official capacity claims against all defendants on all counts.

**IT IS THEREFORE ORDERED** that the remaining portions of plaintiff's Request for Preliminary Injunction (Doc. #41) filed August 14, 2008, be and hereby are **OVERRULED;** that Defendants' Motion to Dismiss or, In the Alternative, Motion for Summary Judgment (Doc. #39) filed July 18, 2008, be and hereby is **SUSTAINED;** and that  Plaintiff's Response to the Defendant's [sic] Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. #40) filed August 5, 2008, in which plaintiff requests class certification be and hereby is **OVERRULED**.

Dated this 9th day of March, 2009 in Kansas City, Kansas.


      s/ Kathryn H. Vratil      
      KATHRYN H. VRATIL
      United States District Judge